**Rafael PONCE, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 08–93–00449–CR.

Court of Appeals of Texas,
El Paso.

March 23, 1995.

David Greenhaw, Odessa, for appellant.

John W. Smith, Dist. Atty., Odessa, for appellee.

Before BARAJAS, C.J., and KOEHLER, LARSEN and CHEW, JJ.

### OPINION

BARAJAS, Chief Justice.

This is an appeal from a conviction for the offense of aggravated sexual assault. A jury found Appellant guilty and assessed punishment at 80 years' confinement in the Institutional Division of the Texas Department of Criminal Justice. We affirm the judgment of the trial court.

### I. SUMMARY OF THE EVIDENCE

On the evening of June 13, 1993, the victim, an asthmatic, stepped outside an Odessa bar for some air when she was approached by Appellant, who asked if she wished to purchase marijuana. The victim responded in the negative and began to walk away. She

had only taken a few steps when Appellant grabbed her by her hair and threw her to the ground. Appellant beat the victim with his fists as he dragged her by the hair across the street to an alley, where he again threw her to the ground. As they crossed the street, Appellant shouted obscenities and told the victim that he was "going to have her." When they reached the alley, Appellant stripped the victim's clothes from her and forced her to engage in oral and vaginal sex, beating her all the while.

Appellant then stepped away from the victim, possibly to urinate, instructing her not to move and threatening anal sex upon his return. The victim was attempting to clothe herself and escape when she saw lights nearby, which prompted her to repeatedly scream for help. In response to her screams, Appellant pummeled the victim with renewed vigor, ripping off the garments she had donned and choking her with his hands. This relentless beating continued for an undetermined period of time, after which a trio of young men, drawn by the victim's shouting, came upon Appellant in the alley. They saw Appellant striking the victim and yelled for him to stop, whereupon Appellant fled the area with the men in pursuit. The three men seized Appellant after a short chase and held him for police. When police arrived, Appellant was arrested on an outstanding warrant.

Shortly after Appellant's attempted flight, a friend found a nude, sobbing, and badly beaten victim in the alley. The friend took the victim home, and the victim's son then summoned police.

The Odessa Police Officer who transported the victim to the hospital testified that, "She was beaten pretty bad. Her nose was pretty crooked, her eyes were red, her neck red." The Odessa Police Officer who arrested Appellant also later observed the victim's condition at the hospital. He stated, "Well, she had been beaten pretty severely. As long as I have been working, I have not seen somebody beaten up this severely." The emergency room physician who treated the victim echoed the officers' testimony in more clinical terms:

> She had bruises on the neck that were found, and on the lower part of her jaw

and around her mouth, nose, face, both cheeks, around the eyelids and eyes, and there is a laceration around the right eye, and there was [sic] streaks looked like scratch marks or something, here on the back. There were abrasions on the elbows; on the breasts, bruises on the breasts, buttocks and lower back and around the knees.... And also, on physical examination, some abrasions on the vaginal opening.

During the punishment phase of trial, Appellant admitted in open court that he raped the victim. Further, Appellant acknowledged the falsity of his testimony during the guilt-innocence phase of trial, which earlier testimony characterized his criminal conduct as consensual.

## II. *DISCUSSION*

Appellant attacks his conviction in a single point of error, claiming his lawyer (the trial attorney) provided ineffective assistance. Appellant claims the trial attorney provided ineffective assistance in three particulars:

(1) by failing to file a pretrial motion requiring the State give notice of its intent to use evidence of extraneous offenses during its case-in-chief;

(2) by failing to object to testimony that Appellant offered to sell marijuana to the victim and that he was arrested on an outstanding warrant; and

(3) by failing to impeach the victim with her prior conviction for possession of marijuana.

Interestingly, Appellant claims error in the foregoing conduct only to the extent it affected his sentence, and expressly waives any challenge to the jury's guilty verdict.

The United States Supreme Court has created a two-part analysis to judge any claim of ineffectiveness of counsel. First, trial counsel's performance must have been deficient under prevailing professional norms; second, there must have been a reasonable probability that but for the deficiencies, the outcome of the proceeding would have been different. *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 2063–

64, 80 L.Ed.2d 674 (1984)[1]. To successfully demonstrate the denial of effective assistance of counsel, Appellant must establish that her counsel's performance was deficient and that the deficiency was so serious that the defendant was deprived of a fair trial, meaning a trial whose result is reliable. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Wilkerson v. State*, 726 S.W.2d 542, 548 (Tex.Crim.App. 1986), *cert. denied*, 480 U.S. 940, 107 S.Ct. 1590, 94 L.Ed.2d 779 (1987). The second prong of the above test requires that the errors have been so serious that Appellant was deprived of a fair trial, which we must find if there exists a reasonable probability that the results would have been different but for counsel's unprofessional errors. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Strickland v. Washington*, 466 U.S. at 694, 104 S.Ct. at 2068; *Wilkerson v. State*, 726 S.W.2d at 548 n. 3.

■ Significantly, the constitutional right to counsel does not mean errorless representation. To meet the constitutional standard, counsel must provide only reasonably effective assistance. *Wilkerson v. State*, 726 S.W.2d at 548. In reviewing assertions of ineffective assistance, we examine the totality of the representation, neither focusing on isolated acts or omissions nor engaging in hindsighted comparisons of how other counsel might have tried the case. *Wilkerson v. State*, 726 S.W.2d at 548. A fair assessment of trial counsel's performance requires that we make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances at trial, and to evaluate the conduct from counsel's perspective at the time of trial. *Stafford v. State*, 813 S.W.2d 503, 506 (Tex.Crim.App.1991). Indeed, we indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, and Appellant must overcome the presumption that the challenged action could be considered sound trial strategy under the circumstances at the time of trial. *Strickland v. Washington*, 466 U.S. at 688–89, 104 S.Ct. at 2064–65; *Stafford v. State*, 813 S.W.2d at 506. Finally, allegations of ineffective assistance must be firmly founded in the record. *Hawkins v. State*, 660 S.W.2d 65, 75 (Tex.Crim.App. 1983); *Mercado v. State*, 615 S.W.2d 225, 228 (Tex.Crim.App.1981).

■ We find the second and third alleged omissions of which Appellant complains to be the results of plausible strategic decisions by the trial attorney. Appellant's trial attorney

---

1. The Court of Criminal Appeals has rejected the *Strickland* test for the punishment phase of a criminal trial. *Ex parte Cruz*, 739 S.W.2d 53, 58 (Tex.Crim.App.1987); *Ex parte Duffy*, 607 S.W.2d 507, 516 (Tex.Crim.App.1980). Although the alleged errors in this case occurred prior to or during the guilt-innocence phase of trial, Appellant expressly confines the scope of his appeal to the punishment phase of the trial. Therefore, the standard for determining whether the Appellant suffered ineffective assistance of counsel arguably should be the standard used before the Supreme Court handed down *Strickland v. Washington*.

The Court of Criminal Appeals has said of the pre-*Strickland* standard: "[T]he right to effective assistance of counsel means counsel reasonably likely to render reasonably effective assistance of counsel." *Ex parte Cruz*, 739 S.W.2d at 58; *see Ex parte Duffy*, 607 S.W.2d at 516. The Court has further explained the standard "to mean not errorless counsel, and not counsel judged ineffective by hindsight, but counsel reasonably likely to render and rendering reasonably effective assistance." *Ex parte Langley*, 833 S.W.2d 141, 143 (Tex.Crim.App.1992); *Ex parte Felton*, 815 S.W.2d 733, 735 (Tex.Crim.App.1991). While

the reviewing court looks at the totality of the representation, under some circumstances a single error of omission by counsel can constitute ineffective assistance. *Id.* at 735. Despite the apparent similarity between the *Duffy* standard and the *Strickland* standard, the analysis announced in *Ex parte Duffy* provides criminal defendants greater constitutional protection, and consequently increases the likelihood of reversal. *See Ware v. State*, 875 S.W.2d 432, 437 (Tex. App.—Waco 1994, pet. ref'd) (applying *Duffy* standard and reversing; stating in dictum that *Strickland* would not require reversal).

The parties' in their briefs do not refer to *Ex parte Cruz* or *Ex parte Duffy*, or otherwise suggest that *Strickland* should not apply to the instant case. We are weary that a decision on the matter may invite criminal defendants to bootstrap into application a more stringent and otherwise inapplicable standard by expressly waiving error with regard to guilt-innocence. Further, the Court of Criminal Appeals has questioned the continued vitality of *Duffy*. *See Ex parte Felton*, 815 S.W.2d at 736–37 n. 4 (characterizing continued use as "questionable"). For the foregoing reasons, we apply the *Strickland* standard to the instant case.

could have decided that incidental references to Appellant's attempt to sell the victim marijuana (mentioned by the victim) and to an outstanding warrant for his arrest (mentioned by the arresting officer) were best left unemphasized by an oral objection before the jury. Indeed, the trial attorney's possible decision not to draw attention to the statements by objecting to them may have been quite effective because neither fact was repeated when it was elicited and neither was emphasized during argument. Thus, the second of the trial attorney's disputed omissions does not support Appellant's point of error.

█ Similarly, the trial attorney's decision not to impeach the victim's statement that she does not "do" marijuana with her prior conviction for possession thereof[2] was a plausible strategic decision. The victim is a middle-aged woman who stands five feet, three inches tall. She speaks only Spanish and testified in court through an interpreter. The evidence showed, and Appellant admitted during the punishment phase of trial, that she was thoroughly and relentlessly brutalized by him. She was struck by innumerable blows from Appellant's fists, dragged on the ground by her hair, twice stripped of all the clothing she wore, made to perform at least two sex acts against her will, threatened with a third, choked, found nude in a public place, seen by her son in an obvious state of distress, taken to a hospital where she was subjected to the humiliating but necessary procedures called for by a sexual assault kit, and finally forced to recount the entire ordeal for all and sundry in open court. Given the violent nature of Appellant's conduct, and what might be perceived as her serial victimization by the crime, the hospital examination, and her testimony at trial, the trial attorney could have strategically decided to forego an aggressive display of legal prowess by using a conviction for possession of marijuana to impeach her indefinite, merely incidental statement that she doesn't use marijuana. That is, the trial attorney could have considered the potential for the jury to perceive a direct attack on her credibility by a professional advocate trained in the rhetorical arts, and so trained in a language the victim does not speak, as the exacerbation of her already tragic suffering, and considered the potential for the jury to actually glean from such conduct that they should question her veracity, and concluded that the former outweighed the latter. Thus, the third of the trial attorney's disputed omissions provides no support for Appellant's sole point of error.

█ Appellant also complains of the trial attorney's failure to file a pre-trial motion pursuant to Texas Rule of Criminal Evidence 404(b)[3], which would have given the trial court the opportunity to instruct the State to inform its witnesses not to testify about Appellant's extraneous offenses. Appellant claims the trial attorney's failure resulted in the admission into evidence of testimonial references to his outstanding arrest warrant and to his attempt to sell the victim marijuana.

█ Appellant erroneously assesses the effect that a Rule 404(b) pre-trial motion could have had on the admissibility of his offer to sell the victim marijuana, claiming this testimony would have been excluded. Although evidence of unadjudicated misconduct is generally inadmissible as character

2. Documentary evidence of this conviction, although not produced at trial, was made part of the appellate record on Appellant's pre-submission motion. The record contains no independent evidence of the victim's conviction. Although we are inclined to withdraw, as improvidently granted, the order granting Appellant's motion to supplement the record with the conviction, we find this action unnecessary because of our conclusion that the trial lawyer could have made a strategic decision not to use the conviction for impeachment purposes.

3. Rule of Criminal Evidence 404(b) provides as follows:

Other Crimes, Wrongs, or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan knowledge, identity, or absence of mistake or accident, provided, upon timely request by the accused, reasonable notice is given in advance of trial of intent to introduce in the State's case in chief such evidence other than that arising in the same transaction.
Tex.R.Crim.Evid. 404(b).

evidence under Rule 404(b), such evidence is admissible if it has relevance apart from its tendency to prove a witness's character. *Montgomery v. State*, 810 S.W.2d 372 (Tex. Crim.App.1990). A party may therefore introduce such evidence if it logically serves to make an elemental fact more or less probable, if it serves to make an evidentiary fact that inferentially leads to an elemental fact more or less probable, or if it serves to make likely defensive evidence that undermines an elemental fact more or less probable. *Beasley v. State*, 838 S.W.2d 695 (Tex.Crim. App.—Dallas 1992, pet. ref'd), *cert. denied*, —— U.S. ——, 114 S.Ct. 451, 126 L.Ed.2d 384 (1993). Appellant offered the victim marijuana immediately after she exited the bar. The victim testified that Appellant's offer constituted his first words upon approaching her outside the bar. The disputed evidence was therefore meaningfully related to consent, which was Appellant's defense at trial, because the jury was entitled to consider Appellant's motivation in initially approaching the victim and his timing in so doing, especially because Appellant claimed he spoke with the victim while both were still inside the bar. Indeed, Appellant's controverting testimony made the offer still more relevant because it raised the issue of why the victim and Appellant were outside, and possibly even why they emerged from the bar together. Thus, the trial attorney's failure to challenge evidence of Appellant's offer to sell the victim marijuana does not support his point of error.

 The only remaining support for Appellant's point of error is the trial attorney's failure to file a Rule 404(b) pre-trial motion in an effort to prevent mention of Appellant's outstanding arrest warrant. Appellant cites case law finding the mention of similar evidence to be error. He further persuasively contends that the inappropriate admission of this evidence certainly had some effect on the jury's assessment of punishment. We do not, however, examine the record for mere error or only for evidence of harm. Appellant's precise claim is that the legal representation provided him by his trial attorney fell below constitutionally guaranteed standards. We reiterate that those constitutional standards do not entitle him to errorless repre-

sentation. He is guaranteed only the reasonably effective assistance of a lawyer. Appellant does not allege that the trial attorney actually knew about the outstanding arrest warrant prior to trial. Appellant has not provided us with a statement of facts from a hearing on a motion for new trial and the record reveals that no such motion was filed. Consequently, we cannot adequately assess what the trial attorney did or did not do to discover that Appellant was arrested on an outstanding warrant, which discovery was a predicate to a Rule 404(b) motion directed at the warrant. *See Toney v. State*, 783 S.W.2d 740, 742 (Tex.App.—El Paso, 1990, pet ref'd) (noting that ineffective assistance claims on direct appeal are usually inadequately documented absent proceeding, such as hearing on motion for new trial, to elicit direct testimony about actions taken by trial attorney to carry out representation). Thus, the trial attorney's mere failure to file a Rule 404(b) pre-trial motion provides no support for Appellant's point of error, and we therefore overrule Appellant's sole point of error in its entirety.

Having overruled Appellant's point of error, we affirm the judgment of the trial court.

KOEHLER, J., not participating.